JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ALAN SIMONS | BUCHANAN INGERSOLL ROONEY, PC |
| | ROYER COOPER COHEN BRAUNFELD, LLC |

| | |
|---|---|
| (b) County of Residence of First Listed Plaintiff   PALM BEACH, FL<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant     PHILADELPHIA, PA<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Paul R. Rosen, Esq., Andrew J. DeFalco, Esq., Spector Gadon Rosen Vinci, PC,<br>1635 Market Street, 7th Floor, Philadelphja, PA 19103 | Attorneys *(If Known)*<br>Craig Mills, Esq., Buchanan Ingersoll Rooney, PC, Two Liberty Place, 50 S. 16th<br>St., Suite 3200, Philadelphia, PA 19102<br><br>Howard Klein, Esq., Conrad O'Brien, PC, 1500 Market Street, Suite 3900,<br>Philadelphia, PA 19102 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
         Plaintiff

☐ 2  U.S. Government
         Defendant

☐ 3  Federal Question
         *(U.S. Government Not a Party)*

☒ 4  Diversity
         *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>      & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>      Student Loans<br>      (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>      of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>      Liability<br>☐ 320 Assault, Libel &<br>      Slander<br>☐ 330 Federal Employers'<br>      Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>      Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>      Product Liability<br>☐ 360 Other Personal<br>      Injury<br>☐ 362 Personal Injury -<br>      Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>      Product Liability<br>☐ 367 Health Care/<br>      Pharmaceutical<br>      Personal Injury<br>      Product Liability<br>☐ 368 Asbestos Personal<br>      Injury Product<br>      Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>      Property Damage<br>☐ 385 Property Damage<br>      Product Liability | ☐ 625 Drug Related Seizure<br>      of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>      28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>      Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>      Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>      Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards<br>      Act<br>☐ 720 Labor/Management<br>      Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>      Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>      Income Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>      or Defendant)<br>☐ 871 IRS—Third Party<br>      26 USC 7609 | ☐ 899 Administrative Procedure<br>      Act/Review or Appeal of<br>      Agency Decision<br>☐ 950 Constitutionality of<br>      State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>      Accommodations<br>☐ 445 Amer. w/Disabilities<br>      Employment<br>☐ 446 Amer. w/Disabilities<br>      Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>      Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>      Conditions of<br>      Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>      Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
         Proceeding

☐ 2  Removed from
         State Court

☐ 3  Remanded from
         Appellate Court

☐ 4  Reinstated or
         Reopened

☐ 5  Transferred from
         Another District
         *(specify)*

☐ 6  Multidistrict
         Litigation

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>28 U.S.C. § 1332<br>Brief description of cause:<br>Legal malpractice |
|---|---|
| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A **CLASS ACTION**<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:  ☒ Yes  ☐ No |
| VIII. RELATED CASE(S) IF ANY | *(See instructions):*      JUDGE _____  DOCKET NUMBER _____ |

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/11/2021 | /s/ Paul R. Rosen/Andrew J. DeFalco |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 2000 S Ocean Boulevard, Apt 305 S, Palm Beach, Florida 33480

Address of Defendant:  100 N. 18th Street, Suite 710, Philadelphia, PA 19103/50 South 16th Street, Suite 3200; Philadelphia, PA 19102-2555

Place of Accident, Incident or Transaction:  PHILADELPHIA, PA

*(Use Reverse Side for Additional Space)*

Does this case have multidistrict litigation possibilities?                                          Yes ☐   No ☒

*RELATED CASE IF ANY*

Case Number:                     Date Terminated

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?                                          Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?                                          Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                                          Yes ☐   No ☒

CIVIL: (Place ☒ in *ONE CATEGORY ONLY*)

| A. *Federal Question Cases:* | B. *Diversity Jurisdiction Cases:* |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify) |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability - Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☒ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) Legal Malpractice |
| 11. ☐ All other Federal Question Cases (please specify)  Copyright | |

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, **Paul R. Rosen, Esquire**   , counsel of record do hereby certify:

☒  Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☐  Relief other than monetary damages is sought (*per 17 U.S.C. §502*)

Date: January 11, 2021

*Attorney at Law*

NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

Date: January 11, 2021           */s/ Paul R. Rosen*           *Attorney at Law*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALAN SIMONS** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. _____** |
| **BUCHANAN INGERSOLL ROONEY, PC,** | : | |
| **and ROYER COOPER COHEN BRAUNFELD** | : | |
| **LLC** | : | |
| **Defendant** | : | |

       In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

       (a)     Habeas Corpus -- Cases brought under 28 U.SC. §2241 through §2255.                           (  )

       (b)     Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  (  )

       (c)     Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2          (  )

       (d)     Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.                              (  )

       (e)     Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See revise side of this form for a detailed explanation of special management cases.)     (  )

(f)     Standard Management -- Cases that does not fall
        into any one of the other tracks.                    ( X )


                              *Paul R. Rosen, Esquire/Andrew J. DeFalco*
                              _____
                              Paul R. Rosen, Esquire
                              Andrew J. DeFalco, Esquire
                              Spector Gadon Rosen Vinci, P.C.
                              1635 Market Street, 7th Floor
                              Philadelphia, Pennsylvania  19103
                              (215) 241-8888 (Main)
                              (215) 241-8844 (Fax)
                              Counsel for Plaintiff

Date:  January 11, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ALAN SIMONS**<br>2000 S Ocean Boulevard, Apt 305 S<br>Palm Beach, Florida 33480<br><br>                        Plaintiff<br><br>          v.<br><br>**ROYER COOPER COHEN BRAUNFELD, L.L.C.**<br>Two Logan Square, 100 N. 18th Street,<br>Suite 710<br>Philadelphia, PA 19103<br><br>and<br><br>**BUCHANAN INGERSOLL & ROONEY, P.C.**<br>Two Liberty Place, 50 South 16th Street,<br>Suite 3200<br>Philadelphia, PA 19102-2555<br><br>                   Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Alan Simons ("Simons"), by and through his counsel, Paul R. Rosen, Esquire and Andrew J. DeFalco, Esquire, for his Complaint against Defendant Royer Cooper Cohen Braunfeld, L.L.C. (the "Royer Firm"), and Defendant Buchanan Ingersoll & Rooney, P.C. (the "Buchanan Firm") (collectively the "Defendants"), states:

## INTRODUCTION

1.      This is an action for breach of fiduciary duty, breach of contract and professional negligence based upon the improper actions and conflicts of interest of the Buchanan Firm and the Royer Firm in drafting a Second Amendment to Put and Call Agreement (the "Second Amendment") between Plaintiff Simons and John Brown ("Brown"), Simons' co-owner of a

company founded by Simons, RDS Vending, LLC ("RDS"), who became Simons' partner in

2007 but was not involved in the daily operations of RDS.  Quite simply, Plaintiff Simons was

not independently represented as to the drafting of the Second Amendment, and he relied on his

existing counsel in their negotiating and drafting the Second Amendment to Put and Call

Agreement, but both existing counsel, the Buchanan Firm and the Royer Firm, which also

represented RDS, its owners and the parties to the Second Amendment prior to and during the

negotiations, took positions that were directly adverse to their client, Simons, they never

disclosed their conflict or requested waivers of the conflict of interest, and they permitted

Simons to execute the Second Amendment without correctly disclosing and explaining to

Simons a newly inserted term in the last draft of the Second Amendment changing the formula

for the "Valuation Date" of the "put" in the Second Amendment, which (according to the

Buchanan Firm) changed the purchase price on exercise of the option by Simons to receive his

payment on his retirement by millions of dollars, which benefit (according to the Buchanan Firm,

which is now taking a position directly adverse to its client Simons) went to Simons' partner due

to the wrongful conduct of the Defendant law firms, which placed Brown's interests above those

of Simons.

2.    Specifically, although Simons (and all other parties and counsel) understood the

"Valuation Date" for the exercise of his option was to be the date of the exercise of his option, to

give Simons the full benefit of the value of his company for his growth with RDS up to the end

of his Employment Agreement in 2021, this language was changed just prior to the signing, to

**"the date of this Amendment (i.e., December 3, 2015, in all cases (i and ii as aforesaid)** …

until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement," such that the

Buchanan Firm now contends that the purchase price for Simons' interest should be reduced by millions of dollars.

3.      As a result, contrary to Simons' understanding, the Second Amendment to Put and Call Agreement was drafted in a manner that (according to the Buchanan Firm) caused Simons to lose millions of dollars, and benefit Buchanan's client Brown by the same amount, upon exercise of the put option that was the subject of the agreement.  Additionally, unlike the Buchanan Firm, the Royer Firm represented RDS, but made it clear that the Royer Firm would protect Simons with respect to the transfer of his ownership to Brown through the Second Amendment.

4.      In fact, both firms represented Simons and were aware of the change of the Valuation Date, but both firms failed to protect their client Simons, and failed to disclose the harm that could inure to Simons through the change that the Buchanan Firm is now asserting exposes Simons to millions of dollars in losses on the Purchase Price, for the benefit of the Brown, relating to the transfer of ownership to Brown.

5.      Indeed, both firms were aware at the relevant times that Simons was unrepresented by an independent counsel, and would not understand the serious exposure of the proposed change Valuation Date and resulting loss to Simons, which Buchanan now claims and relies upon for the benefit of Brown.   This lawsuit is a claim against both law firms for their joint failure to comply with Pennsylvania Rule of Professional Conduct 1.7 and prevent conflicts of interest, arising from their joint failure to disclose conflicts of interest and exposures, and Defendants are now liable for any losses to Simons arising from those conflicts and the change in the Valuation Date to create them.

## PARTIES

6.     Plaintiff, Alan Simons, is an adult individual and resident of the State of Florida, with a home address located at 2000 S Ocean Boulevard, Apt 305 S, Palm Beach, Florida 33480.

7.     Defendant, Defendant Royer Cooper Cohen Braunfeld, LLC., is a Professional Limited Liability Company organized and existing under the laws of the Commonwealth of Pennsylvania, with a Philadelphia address located at Two Logan Square, 100 N. 18th Street, Suite 710, Philadelphia, PA 19103.

8.     Defendant, Buchanan Ingersoll Rooney, PC, is a Professional Corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a Philadelphia address located at Two Liberty Place, 50 South 16th Street, Suite 3200, Philadelphia, PA 19102-2555.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy in this matter exceeds the sum or value of $75,000, and is between citizens of different states.

10.     Venue in this Judicial District is proper pursuant to 28 U.S.C. § 1391 (a) and (c), because the Defendants reside in this Judicial District, and a substantial part of the events and/or omissions giving rise to the claim occurred in this Judicial District.

## FACTUAL BACKGROUND

A.     THE BUCHANAN FIRM AND THE ROYER FIRM

11.     Defendant, the Buchanan Firm, holds itself out to the public as a law firm with special expertise in the area of corporate transactions:

> Our corporate team structures, negotiates, documents and completes transactions essential to your operational and strategic objectives.  Using our highly

> collaborative and multi-disciplinary resources, we can assist you with even the
> most complex transactions.  We are large enough to handle even the most
> complex corporate transactions, with at the same time providing partner-level
> attention to every matter.

> Our corporate services include multiple areas of focus, such as … commercial
> contracts … Because we offer such a comprehensive range of services, and
> because our attorneys become immersed in our clients' culture and thoroughly
> knowledgeable of their business objectives, clients come to see us as long term
> partners.  This type of relationship and the insights it provides is what will allow
> us to provide you with the high-value counsel and tailored results you need and
> expect.

12.     Likewise, Defendant the Royer Firm also holds itself out to the public as expert

business advisors and counsellors.

> We counsel our clients in all areas of business and corporate law, including
> mergers and acquisitions, private equity and venture capital financings,
> commercial transactions, debt financings and credit facilities, fund formation and
> alternative investments, restructurings and workouts, recapitalizations, technology
> contracting and licensing, securities transactions and securities law compliance,
> and general business structuring and corporate counseling.

> Our business clients consist of start-up, emerging and established privately held
> and publicly-traded companies, private equity and venture capital firms,
> individual investors and family offices, entrepreneurs and company executives,
> commercial and institutional lenders, and investment advisers. We provide sound
> practical counsel for every life stage for our clients' business ventures.

> Our clients span a wide range of industries, including software and IT solutions,
> internet, social media, life sciences, including biotechnology, healthcare services
> and medical devices, energy, technology, transportation and logistics, digital
> printing and labeling, consumer and retail, telecommunications, investment
> management and financial services, real estate investment and development, and
> advertising and media.

> At RCCB, we understand business from the inside out.  Our Corporate &
> Business Group attorneys have also served as general counsels and in other roles
> for businesses, have worked at large firms and small, and, in founding RCCB, are
> entrepreneurs ourselves.

> "We have been in the trenches ourselves, helping businesses start, run, and grow,
> and we believe that gives us added insight into the needs of our clients, helping us
> offer sophisticated advice that is practical, efficient, and effective," said John
> Royer, RCCB Managing Partner.

We view business in a personal way, from personal experience. We look forward to assisting you with creative practical solutions that fit your goals-and those of your organization.

**B.**   **SIMONS, RDS, THE "PUT AND CALL AGREEMENT" AND THE AMENDED AGREEMENT**

13.   Plaintiff is a serial entrepreneur and a pioneer of the vending industry in

Philadelphia.  Through the company he founded, RDS, Simons is the most prominent, successful

and trusted provider of vending machines and supplies, coffee and "micro-markets" in the

Philadelphia area.

14.   Before 2007, Simons was the sole owner-operator of RDS.

15.   However, in January 2007, Simons entered into various agreements with Brown

and others through which Simons, among other things, sold 50% of his interest in RDS to

Brown, which agreements made Simons and Brown the sole shareholders of RDS.  However,

Brown was a "silent" partner, and at all relevant times Simons was solely responsible for the

operations of RDS.

16.   One of those agreements was a January 7, 2007 "Put and Call Agreement"

between Simons on the one hand, and Brown and Thomas Hutchinson ("Hutchinson") on the

other.  [See January 7, 2007 Put and Call Agreement," attached as Exhibit "1"]

17.   The Put and Call Agreement, entered as part of a transaction that included a

Membership Interest Purchase Agreement ("MIPA") of the same date, provided a mechanism,

the "Put Option," under which Simons had the right to "put" to Brown, requiring Brown to

purchase Simons' ownership interest in RDS:

> Simons shall have the right to put to Buyer and require Buyer to purchase all of
> the Option Interests owned by Simons as of the date of exercise of the Put Option
> for an aggregate purchase price equal to an amount in U.S. Dollars that is as set
> forth in Schedule 2 set forth herein (the "Put Purchase Price"), on the date (the
> "Valuation Date") that is the last day of the calendar quarter that ended
> immediately prior to the earlier of (i) the expiration of the original term of Simons

Employment Agreement set forth in the MIPA, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement, or (iii) the third anniversary of this Agreement, in all cases (i, ii and iii aforesaid) until the fifth anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion. … [Ex. "1," ¶ 2]

18.     To determine the purchase price of the "put," Schedule "2" of the Put and Call Agreement stated:

The Put Purchase Price of the Membership Interests (being 50% membership interests in the Company) shall be equal to 25% of the Gross Revenues for the 12 month period (the "Valuation Period") ending on the Valuation Date as defined in Section 2 above, computed, adjusted, and allocated in the same manner, and subject to the same formulae as set forth in Section 2.1 of the [Membership Interest Purchase Agreement]. [Ex. "1," Schedule "2"]

19.     On March 2, 2011, the Put and Call Agreement was amended to extend the time to exercise the Put Option:

Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons as of the date of exercise of the Put Option for an aggregate purchase price equal to an amount in U.S. Dollars that is as set forth in Schedule 2 set forth herein (the "Put Purchase Price"), on the date (the "Valuation Date") that is the last day of the calendar quarter that ended immediately prior to the earlier of (i) the expiration of the term of Simons Employment Agreement set forth in the MIPA as such term may be extended by continuous employment of Simons, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement, or (iii) the fourth anniversary (i.e., 1/2/2011) of this Agreement, in all cases (i and ii aforesaid) until the ninth anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion. … [See Amendment to Put and Call Agreement, Ex. "2," ¶ 2]

## C.     THE BUCHANAN FIRM AND THE ROYER FIRM BEGIN TO REPRESENT SIMONS AND RDS

20.     In October 2013, Simons signed a fee agreement for the Buchanan Firm to represent RDS in "in connection with pursuing vending opportunities with the Philadelphia Airport *and other matters as to which we accept [Simons'] request for legal representation*." [Ex. "3"]

21.     Thereafter, the Buchanan Firm regularly provided "general corporate [legal] advice" to Simons on a number of business-related matters, on behalf of RDS, other entitles owned by Simons, and Simons himself.

22.     Moreover, because Simons was the President of RDS, and at that point solely responsible for the operations of RDS, the Buchanan Firm was in constant and direct communication with Simons regarding his business ventures.

23.     All things considered, in light of the fact that RDS was a small and closely-held corporation solely operated and managed by Simons, at all relevant times the Buchanan Firm represented not just RDS, but Simons and all of his business interests as well.

24.     Moreover, the Buchanan Firm represented Simons, individually, in a number of different matters.

25.     For example, in 2015, the Buchanan Firm represented Simons and Brown in a corporate matter to attempt to purchase a company through a wholly-owned subsidiary of RDS created for that purpose.

26.     Likewise, the Buchanan Firm represented Simons, individually, along with a person named Tyrone Small, to pursue opportunities at the Philadelphia Airport.

27.     Additionally, in July 2014, Simons retained the Royer Firm to represent RDS "to act as outside counsel with regard to certain employment agreements, contractual issues, and for such other matters as we may agree from time to time."  [Ex. "4"]  For the same reasons set forth above, the Royer Firm had a duty of loyalty to the owners and represented not just RDS, but also Simons when his personal interests were involved with the other owner of RDS, such as a purchase price for a change of control with respect to RDS.

28.     Both the Buchanan Firm and the Royer Firm knew that they could not be adverse to RDS or its owners, Simons and Brown, without an appropriate written waiver signed by RDS, Brown and Simons pursuant to Rule 1.7 of the Pennsylvania Rules of Professional Conduct.

**D.     NEGOTIATIONS FOR AND CONSUMMATION OF THE SECOND AMENDMENT TO THE PUT AND CALL AGREEMENT**

29.     In 2015, the Buchanan Firm continued to represent RDS, Simons was the ***only*** contact for RDS with respect to the Buchanan Firm's representation, and Simons consulted regularly and directly with the Buchanan Firm relating to all aspects of its representation.  [See July 2015 Invoices from the Buchanan Firm, Ex. "5"]

30.     As of September 2015, the Buchanan Firm continued to represent RDS and Simons and continued to communicate directly with Simons (and not Brown) as to RDS' continuing legal matters, and continued to provide "general corporate advice" directly to Simons. [See November 2015 Invoices from the Buchanan Firm, Ex. "6"]

31.     At the same time, Brown and Simons desired to amend the Put and Call Agreement, extend his Put Option for an additional term until his retirement in January 2021, and extend his Employment Contract for the same time.  Simons asked the Royer Firm to take the initial "laboring oar" in preparing amendments extending his Put Option and the term of his Employment Agreement, with the same rights.  His partner, Brown, retained the Buchanan Firm to represent Brown, ***individually and adversely to Simons***, in negotiations for a Second Amendment to the Put and Call Agreement.

32.     Simons had no notice from either law firm that there was a problem, that new counsel needed to be engaged, that a conflict of loyalty arising from multiple representations could harm him, or that there was any concern that Simons was not protected.

33.     However, the Defendant law firms each knew that their representation gave rise to a concurrent conflict of interest and violated Pennsylvania Rule of Professional Conduct 1.7, and that both Defendant law firms needed to obtain written express conflict waivers signed by Brown, RDS and Simons, with full and complete disclosure of the potential harm that could inure to Simons if new and independent counsel was not retained.

34.     Neither the Buchanan Firm nor the Royer Firm ever obtained any written or oral waivers from RDS or Simons, and nether advised Simons or RDS of the need for separate and independent counsel because of the conflict.  Instead, both firms made and/or approved changes to the "Valuation Date" and the resulting "Put Purchase Price" and other provisions, which (according to the position now taken by the Buchanan Firm against its client Simons) had the effect of materially and substantially reducing the aggregate purchase price of the Put Option, and precluding Simons from obtaining a benefit on the exercise the Put Option for the full "Put Purchase Price" and the growth of the RDS business, all of which went exclusively to the benefit of Brown.  Neither Defendant ever explained or addressed in any written document or otherwise the conflict of interest or the harm to Simons, as required under Pennsylvania Rule of Professional Conduct 1.7, and Defendants never explained to Simons any existing or potential consequence that the "Valuation Date" set forth in the new draft of the Second Amendment or its impact on the aggregate "Put Purchase Price," which (according to the Buchanan Firm, now directly adverse to its client Simons) removed all of the "put" value to Simons for the growth of the company after the exercise of the Second Amendment, which would ultimately cost Simons millions of dollars.

35.     The Royer Firm advised Simons that it would represent RDS as to the negotiations and preparation of the extension of his Employment Agreement to January 2021,

and the preparation of the Second Amendment to the Put and Call Agreement.  However, recognizing that Simons would be effectively unrepresented with respect to the negotiations, Attorney Barry Cohen, Esquire, a partner of the Royer Firm, promised Simons "***don't worry we'll take care of you***."  He and the Buchanan Firm certainly carried out that representation!

36.     Simons advised the Royer Firm and the Buchanan Firm that his main goal was to ensure that when he exercised his "put" option, there would be a Purchase Price for his interest that rewarded him for his hard work and continuing to build the business through his retirement under his existing Employment Agreement, which benefit would extend through the 2021 expiration of the Employment Agreement.  For example, Simons wanted to ensure that if he added 20% value to the business between 2015 and his exercise of the option in at the end of his Employment Agreement in 2021, Simons would be rewarded for that increase in value when he exercised his "put" option.

37.     This was reflected in the draft of the Second Amendment to the Put and Call Agreement, the initial draft of which was prepared by the Royer Firm, and then sent to the Buchan Firm, which draft was then revised and sent from Craig Mills, Esquire of the Buchanan Firm, to his client Brown, through an e-mail dated November 18, 2015, and then sent to Simons by Brown.  Mills forwarded his revised draft to Brown together with a November 18, 2015 email to Brown that stated:

> I've attached a word version of the Amendment No. 2 that Alan sent to you.  I have marked this up to:
>
> ***Extend the [valuation] date of the Put and Call Option Periods [to exercise the "Put Purchase Price"] by a uniform 5 years (2016-2021);***
>
> Give you [Brown] 12 months to raise the Put Purchase Price (***I did not give this same right to Alan re the Call Option Price, but he may want that***);
>
> Insert the banking/debt reconciliation clause ***you*** requested; and

Make clear that Hutchinson is not a party to this agreement and that it does not affect any of his rights.

If these changes are OK I can take out the redlines and put it in smooth format. Or, you may want to send it to Alan in reline so he can see what was changed. Just let me know.

[See November 18, 2015 email from Mills to Brown, later forwarded to Simons, with attached draft Amendment No. 2, Ex. "7"] (Emphasis supplied).

38.     In this draft, dated November 18, 2015, there was a "Valuation Date" for the exercise of the Put Option for the "Put Purchase Price" that rewarded Simons for his work in the future through the end of his Employment Agreement:

> Put Option. Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons *as of the date of exercise of the Put Option* for an aggregate purchase price equal to an amount in U.S. dollars that is as set forth in Schedule 2 set forth therein (the "Put Purchase Price"), on the date (the "Valuation Date") that is the last day of the calendar quarter that ended immediately prior to the *earlier of* (i) the expiration of the term of Simons Employment Agreement set forth in the MI PA, as such term may be extended by continuous employment of Simons, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement*, or (iii) the ninth anniversary (i.e., January 2, 2016) of this Agreement until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement (the "Put Period")*, at Simons' (or if applicable, his personal representative's) discretion.  [Ex. "7"] (Emphasis supplied)

39.     However, the Royer Firm and the Buchanan Firm, despite each having fiduciary duties to Simons, as well as obligations to Simons under Pennsylvania Rule of Professional Conduct 1.7,  to disclose and warn of consequences of conflicts and (where appropriate) obtain waivers, ignored this responsibility from day one, and continued to ignore this responsibility through the signing of the Second Amendment, where they approved and agreed to change the "Valuation Date" and the "Put Purchase Price" in the draft Second Amendment to the Put and Call Agreement set forth above, which (according to the Buchanan Firm, now directly adverse to

-12-

its client Simons) changed the "Valuation Date"  and created a new "Put Purchase Price" that the Buchanan Firm and Brown each now claim removes any future entitlement to Simons for the growth of the business for the next five (5) years.

40.     This claimed change by counsel for the parties of the "Valuation Date" and the aggregate "Put Purchase Price" in the final signed Second Amendment, according to the Buchanan Firm (now directly adverse to its client Simons) removed any value to Simons for continuing to grow the business.  In other words, even if Simons spent the next five (5) years of his life growing the business, he would see not one dime for that growth, because the Valuation Date and aggregate purchase price changed after the November 18, 2015 draft sent to Simons by Brown.  The final Second Amendment effectively, according to the Buchanan Firm, provided that the "Valuation Date" for the Put Option would be the ***date the Second Amendment is signed***, not the date that the Put Option was exercised through January 2, 2021, which would have permitted Simons to exercise his Put Option, and reap the benefit of Simons work at any time prior to the expiration of his Employment Contract prior to 2021 – this (according to Buchanan) gave rise to a shift of millions of dollars in Brown's favor. .

41.     The final Second Amendment was presented to Simons for his signature on December 3, 2015, and this completed the wrongful conduct of the Defendants, and their malpractice through a changed "Valuation Date" that Buchanan would later assert resulted in a "Put Purchase Price" that was substantially changed in favor of Brown:

> Put Option. Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons as of the date of exercise of the Put Option for an aggregate purchase price equal to an amount in U.S. dollars that is as set forth in Schedule 2 set forth therein **(the "Put Purchase Price"), on the date (the "Valuation Date")** that is the last day of the calendar quarter that ended immediately prior to the ***"earlier*** of" (i) the expiration of the term of Simons Employment Agreement set forth in the MI PA, as such term may be extended by continuous employment of Simons, or (ii) the death or date of

disability of Simons as defined in the Simons Employment Agreement*, or (iii) the date of this Amendment (i.e., December 3, 2015 , in all cases (i and ii as aforesaid)* … until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion*.*

[See signed Amendment No. 2 to Put and Call Agreement, Ex. "8"]

42.     The Defendants knew their representation was flawed from "day one" when they failed to comply with the Rules of Professional Conduct and their fiduciary duties to Simons and RDS.  As a result of counsel's conduct and conflicts of interest, Buchanan now takes the position that all of the increased value of RDS arising from Simons post-2015 work unknowingly went to Brown, a silent partner, who now is only entitled to receive fifty percent (50%) of the growth, but will (according to Buchanan) now receive 100% of the growth (to the tune of millions of dollars in increased value) of Simons' interest, despite Simons being solely responsible for 100% of the growth in the company since Brown had no involvement in the operations of the company.

43.     The Defendants each knew that their representation gave rise to a concurrent conflict of interest with both owners of RDS and violated Pennsylvania Rule of Professional Conduct 1.7, but they never obtained a written waiver or disclosed in writing the impact of their conflict or the substantial exposure that Simons would sustain through the change of the Valuation Date, where both Defendant law firms *agreed to the change and in so doing, placed the interests of Brown above Simons' interest*s.

44.     Both the Buchanan Firm and the Royer Firm, as well as Brown, understood that the revised "Valuation Date" provision in the final executed Second Amendment to the Put and Call Agreement permitted Buchanan to claim that it worked to the extreme benefit of Brown, and to the severe detriment of Simons, such that the changes were directly adverse to the interests of Simons.

45.     By placing their duty of loyalty to Brown above their duty of loyalty to Simons, by failing to advise Simons of the conflicts of interest, and by inserting a "Valuation Date" provision in the final Second Amendment to Put and Call Agreement that Buchanan now asserts is directly adverse to Simons' interests, and solely for the benefit of Brown, both the Buchanan Firm and the Royer Firm breached their fiduciary duties to Simons and committed legal malpractice.

**E.     AS A RESULT OF THE BREACHES AND MALPRACTICE BY THE BUCHANAN FIRM AND THE ROYER FIRM, SIMONS SUSTAINS MILLIONS OF DOLLARS IN OUT-OF-POCKET DAMAGES**

46.     After the December 3, 2015 execution of the Second Amendment to Put and Call Agreement, with Simons unaware that the final draft was changed and the Buchanan Firm would later assert that Simons has a loss of millions of dollars in Purchase Price that went to the benefit of Brown, Simons continued to build his company for his future retirement, working tirelessly, day and night, to continue to build RDS, and ensure the long-term financial success of RDS, Brown and Simons through Simons' his retirement.  As a result of this work, Buchanan and Brown now claim that Simons unknowingly and dramatically decreased the "Put Purchase Price" for Brown of Simons' 50% ownership, thereby substantially increasing the value of Brown's windfall purchase price of RDS, at Simons' expense.

47.     Years later, Simons exercised the Put Option in March 2020, and at Brown's request, Simons sent to Brown the amount that would be due to Simons for the Put Option through December 31, 2019.  At that point, the Buchanan Firm advised Simons in July 2020  that they now dispute the Valuation Date agreed upon by Buchanan and Brown for the full term to January 2021 claimed by Simons, and instead changed their position and contend that the Valuation Date for the exercise of the Put Option is in all cases was years earlier on the signing date of the Second Amendment, December 3, 2015, giving rise to a loss to Simons of years of

growth of RDS, and millions of dollars going to Buchanan's client Brown at Simons' expense. At this time, Simons discovered the malpractice of the Buchanan Firm and the Royer Firm that would involve additional litigation and exposure.

48.     In other words, after Simons executed his "put" option in March 2020, to Simons' shock and surprise, Brown and his counsel from the Buchanan Firm told Simons that the Valuation Date was December 3, 2015, the date they signed Amendment No. 2 to the Put Agreement

49.     Thus, Brown and the Buchanan Firm contended that the change of the Valuation Date in the final draft of the Second Amendment effectively reduced the aggregate purchase price of RDS, on the exercise date of March 17, 2020 and for the Put Period ending ***December 31, 2019,*** to the value of RDS on ***December 3, 2015,*** preventing Simons from receiving the benefit of over four (4) years of growth of RDS arising from Simons' work, and allowing Brown to obtain all of that benefit by saving him millions of dollars in the purchase of Simons' ownership of RDS, a fraction of what it is really worth.

50.     Simons was incredulous, and could not comprehend how a "put" agreement, to be exercised in the future before the end of his employment agreement (in 2021), to permit him to obtain the benefit of the company's growth that Simons created, was limited to a date approximately four (4) years earlier (i.e., December 3, 2015), with no increase in value which Simons had created which would preclude him from reaping the benefit of his work on behalf of the Company for the last four-plus years and which would be contrary to the whole concept of the language of the Put Agreement.  This was obviously not what was intended.

51.     The last-minute change by Defendants of the "Valuation Date" language, unbeknownst to Simons, was either material omissions, errors and mistakes, or a conscious

intentional change by either or both of the Defendants that (according to Buchanan years later in July 2020) when they disclosed it for the first time, and now benefitted Brown (which will be disclosed during discovery) to the tune of millions of dollars of savings on the purchase of his partner's interest, it is obviously not what both counsel for the parties intended, and it should be easily corrected.

52.     Brown and his attorney in the Buchanan Firm (which previously represented RDS, Simons and Brown), then sought to enforce their malpractice for Brown, and against its own client, Simons.

53.     The damages proximately caused by the conflicts of interest and other professional malpractice of the Buchanan Firm and the Royer Firm with respect to the Second Amendment to Put and Call Agreement include, but are not limited to, the millions of dollars in losses on Simons' lost value based on the change to the Valuation Date of the Put and Call Agreement, plus interest.

54.     The professional malpractice and wrongful conduct of Defendants in Defendant law firms each knew that their representation gave rise to a concurrent conflict of interest with both owners of RDS, violated Pennsylvania Rule of Professional Conduct 1.7 requiring written singed conflict waivers from RDS, Brown and Simons, and violated of their duty of loyalty, as well as their failure to explain a material financial change to the owner of RDS (their client), Simons, is the proximate cause of the liability and damages specified herein, and the Defendants are liable to Simons for same.

55.     This case is about professional malpractice and conflicts of interests, and the consequences of that conduct and appropriate damages.

**COUNT I**

## BREACH OF FIDUCIARY DUTY

56.     Simons repeats and realleges all of the foregoing paragraphs as though fully set forth at length herein.

57.     At all relevant times, an attorney-client relationship existed between Simons, RDS and Brown on the one hand, and the Buchanan Firm on the other.

58.     At all relevant times, an attorney-client relationship existed between Simons and RDS on the one hand, and the Royer Firm on the other.

59.     At all relevant times, the Buchanan Firm owed a fiduciary duty of loyalty to Simon, Brown and RDS and was obligated to avoid a conflict of interest with the legal interests of RDS and Simons.

60.     At all relevant times, the Royer Firm owed a fiduciary duty of loyalty to RDS and Simons, and was obligated to avoid a conflict of interest with the legal interests to the owners of RDS and Simons.

61.     By agreeing to insert a provision in the Second Amendment to the Put and Call Agreement, making the "Valuation Date" December 3, 2015, rather than the date of the exercise of the "put" as Simons understood, without Simons understanding that the "Valuation Date" provision would be changed to his severe detriment to reduce the "Put Purchase Price," and without Simons understanding the severe consequences pursuant to that change, he would effectively be forced to forego millions of dollars that he would earn through his hard work and management of RDS, for the sole and exclusive benefit of Brown, the Royer Firm and the Buchanan Firm each jointly and severally breached their duty of loyalty and violated Pennsylvania Rule of Professional Conduct 1.7 , to avoid conflicts of interest, and their duty of loyalty, by placing Brown's interests far above those of Simons.

-18-

62.     The Royer Firm and the Buchanan Firm are vicariously liable for the misconduct of their partners and/or associates.

63.     As a direct and proximate result of the above-described breaches of fiduciary duty and violations of Pennsylvania Rule of Professional Conduct 1.7 and their duties of loyalty, Simons has suffered and continued to suffer significant financial damages presently estimated to be multi-millions of dollars, representing a lifetime of work and ownership of RDS.

64.     Consideration of the nature of the conduct, the motives, interests, and the relationships among the parties, among other things, reflect that punitive damages should be assessed against the Defendants.

WHEREFORE, Plaintiff Alan Simons respectfully requests that this Court enter judgment in his favor, and against the Defendants, in an amount in excess of $50,000, together with costs, pre- and post-judgment interest,   punitive damages, and such other relief as the Court deems justified.

## COUNT II

## PROFESSIONAL NEGLIGENCE

65.     Simons repeats and realleges all of the foregoing paragraphs as though fully set forth at length herein.

66.     Defendants owed duties to Simons to exercise ordinary skill and knowledge related to the professional practice of law, and to the supervision of its employees engaged in the professional practice of law, and Defendants are vicariously liable for the failure of their employees to exercise ordinary skill and knowledge related to the professional practice of law.

67.     At all relevant times, Defendants owed to Simons and the owners of RDS the fiduciary duties all attorneys owe their clients to avoid conflicts of interest and to comply with

-19-

Pennsylvania Rule of Professional Conduct, and to avoid accepting representations directly adverse to their client's interests.

68.     Defendants' failures to exercise ordinary skill and knowledge related to the professional practice of law consisted of their breaches of duty to avoid conflicts of interest by placing Brown's interests far above those of Simons, and inserting and changing a "Valuation Date" provision in the Second Amendment to Put and Call Agreement that caused severe harm to Simons, for the benefit of Brown in the amount of millions of dollars, as set forth above.

69.     As a direct and proximate cause of Defendants negligent and or negligent misrepresentation conduct, Simons has suffered substantial economic losses and emotional distress associated with the improper actions of the Defendants.

WHEREFORE, Plaintiff Alan Simons respectfully requests that this Court enter judgment in his favor, and against the Defendants, in an amount in excess of $50,000, together with costs, pre- and post-judgment interest, attorney's fees, punitive damages, and such other relief as the Court deems justified.

## COUNT III

## **BREACH OF CONTRACT**

70.     Simons repeats and realleges all of the foregoing paragraphs as though fully set forth at length herein.

71.     RDS and Simons entered into fee agreements with the Defendants, and based upon the nature of Defendants' representation, Simons was a client of the Defendants arising from his ownership in RDS.  Pursuant to the fee agreements, Defendants agreed to provide non-conflicted and independent legal services.

72.     In performing the legal services for which it was retained, Defendants were required to exercise ordinary skill and knowledge related to the professional practice of law, to follow the Pennsylvania Rules of Professional Conduct, and to avoid improper conflicts of interest and placing the interests of one client over those of another.

73.     As attorneys who held themselves out to have expertise in corporate and contract representation, Defendants failed to exercise the ordinary skill and knowledge related to the professional practice of law, a failure that directly led to the losses suffered by Simons.

74.     The conduct of Defendants in performing their contracted services, and breaching their duty to avoid conflicts of interest by placing Brown's interests far above those of Simons, and inserting a "Valuation Date" provision in the Second Amendment to Put and Call Agreement that caused severe harm to Simons, for the benefit of Brown, as set forth above, the conduct of Defendants relating to the legal matters to which they were entrusted was so deficient as to substantially cause the economic damages suffered by Simons.

75.     All of Defendants' harmful conduct would have been avoided had Defendants followed Rule 1.7 of the Pennsylvania Rules of Professional Conduct, made the appropriate disclosures, and obtained the appropriate written conflict waivers, prior to the commencement of their representation of Brown, RDS and Simons, or requested that both Simons and Brown also select independent counsel to avoid the risk of harm and conflicts of interest.

76.     As a direct and proximate cause of Defendants' failure to perform contracted services, Simons has suffered substantial economic losses for which compensation is sought herein.

WHEREFORE, Plaintiff Alan Simons respectfully requests that this Court enter judgment in his favor, and against the Defendants, in an amount in excess of $50,000, together

with costs, pre- and post-judgment interest, punitive damages, and such other relief as the Court

deems justified.

## NOTICE OF PRESERVATION OF EVIDENCE

PLAINTIFF HEREBY DEMANDS AND REQUESTS THAT DEFENDANTS TAKE

ALL NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS,

COMMUNICATIONS, AND DISCOVERABLE MATERIALS, INCLUDING ALL

MARKETING AND SOLICITATION MEMBERSHIP MATERIALS, AND

COMMUNICATIONS WITH THIRD PARTIES, WHETHER ELECTRONIC OR

OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY

PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS

ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS

ACCESS TO, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER

BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF

ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

*Paul R. Rosen, Esquire/Andrew J. DeFalco*
_____
Paul R. Rosen, Esquire
Andrew J. DeFalco, Esquire
Spector Gadon Rosen Vinci, P.C.
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania  19103
(215) 241-8888 (Main)
(215) 241-8844 (Fax)
Counsel for Plaintiff

Date:  January 11, 2021

-22-

**SPECTOR GADON ROSEN VINCI, P.C.**
By:     Paul R. Rosen, Esquire                    Attorneys for Plaintiff
Attorney I.D. No. 13396
By:     Andrew J. DeFalco, Esquire
Attorney I.D. No. 84360
Seven Penn Center Plaza
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888

| | |
|---|---|
| **ALAN SIMONS** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiff | OCTOBER TERM, 2020 |
| v. | NO. 1406 |
| **ROYER COOPER COHEN BRAUNFELD,<br>L.L.C.** and **BUCHANAN INGERSOLL &<br>ROONEY, P.C.** | |
| Defendants. | |

**CERTIFICATE OF MERIT AS TO PLAINTIFF'S COMPLAINT AGAINST**
**BUCHANAN INGERSOLL & ROONEY, P.C.**
**AND ROYER COOPER COHEN BRAUNFELD, L.L.C.**

       I, Paul R. Rosen, Esquire, counsel for Plaintiff, certifies that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

                                 *Paul R. Rosen, Esquire*
                             _____
                             Paul R. Rosen, Esquire
                             Spector Gadon Rosen Vinci, P.C.
                             1635 Market Street, 7th Floor
                             Philadelphia, Pennsylvania  19103
                             (215) 241-8888 (Main)
                             (215) 241-8844 (Fax)
                             Counsel for Plaintiff

Date:  January 11, 2021

-23-