IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALAN SIMONS, : | |
| : | |
| Plaintiff, : | Civil Action No. 21-00129 |
| : | |
| v. : | |
| : | |
| ROYER COOPER COHEN : | |
| BRAUNFELD, L.L.C, and BUCHANAN : | |
| INGERSOLL & ROONEY, P.C., : | |
| : | |
| Defendants. : | |

**DEFENDANT ROYER COOPER COHEN BRAUNFELD LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Royer Cooper Cohen Braunfeld LLC ("RCCB"), by and through its undersigned counsel, submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION

This action involves an attempt by Plaintiff Alan Simons ("Plaintiff or Simons"), a sophisticated businessman, to blame RCCB for damages arising out of a contract that Plaintiff entered into nearly fifteen (15) years ago. Plaintiff has brought three claims against RCCB: (1) Breach of Fiduciary Duty; (2) Professional Negligence; and (3) Breach of Contract. Plaintiff's claims against RCCB fail for two primary reasons.

**First**, Plaintiff's claims are barred by the statute of limitations. Count I and Count II have a two-year statute of limitations and Count III has a four-year statute of limitations. While the underlying contract was originally drafted fifteen years ago, the amendment at issue was executed on December 3, 2015 (the "2015 Put and Call Amendment"). Plaintiff's claims arise out of RCCB's alleged involvement with the drafting of the 2015 Put and Call Amendment. RCCB's

breach of any duties owed to Plaintiff allegedly occurred prior to December 3, 2015—i.e., over five years ago. Accordingly, Plaintiff's claims against RCCB are time-barred.

**Second**, Plaintiff's claims are barred because RCCB did not represent Plaintiff individually with respect to RDS. To state a claim against RCCB, Plaintiff must establish there was an attorney-client relationship between RCCB and Plaintiff. But as shown in the engagement letter attached to Plaintiff's Amended Complaint, RCCB was not engaged to represent Plaintiff in an individual capacity; instead, RCCB was engaged solely to represent Plaintiff's business and not "any related . . . officers, directors, shareholders or employees in their individual capacities."

Even if Plaintiff overcomes these significant legal hurdles, each count of Plaintiff's Amended Complaint fails for a separate reason. Count I fails because there was no conflict of interest that needed to be avoided or disclosed. Plaintiff and Brown are the only signatories to the 2015 Put and Call Amendment. Plaintiff does not allege that RCCB represented Brown. Accordingly, even assuming that RCCB represented Plaintiff (it did not), no conflict of interest existed because RCCB did not represent Brown. Count II fails because Plaintiff does not allege that RCCB breached a duty of care. Instead, Plaintiff simply repackages his breach of fiduciary duty claim as a professional malpractice claim. Finally, Count III is barred by the gist of the action doctrine. Plaintiff has not identified a specific promise that RCCB breached. Instead, the gist of Plaintiff's allegations against RCCB sound in tort (*i.e.*, for a breach of a duty of loyalty), rather than contract. For all of these reasons, Plaintiff's claims against RCCB should be dismissed.

## II.     RELEVANT BACKGROUND[1]

Plaintiff is a self-described "serial entrepreneur and a pioneer of the vending industry in Philadelphia." (Am. Compl. ¶ 13, ECF No. 5.) Plaintiff founded RDS Vending, LLC ("RDS") and

---

[1] For purposes of this motion only, RCCB takes, as it must, Plaintiff's allegations of fact as set forth in his Amended Complaint.

was the sole owner-operator of RDS prior to 2007. (*Id.* at ¶¶ 1, 14.) Through RDS, Plaintiff claims to be "the most prominent, successful and trusted provider of vending machines and supplies, coffee and 'micro-markets' in the Philadelphia area." (*Id.* at ¶ 13.)

In January 2007, Plaintiff entered into various agreements with John Brown ("Brown") which, among other things, made Brown a 50% shareholder of RDS. (*Id.* at ¶ 15.) One of the agreements executed on January 7, 2007 was a "Put and Call Agreement" which provided a mechanism (the "Put Option") under which Plaintiff had the right to "put" to Brown, requiring Brown to purchase Plaintiff's remaining 50% ownership interest in RDS:

> Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons as of the date of exercise of the Put Option for an aggregate purchase price equal to an amount in U.S. Dollars that is as set forth in Schedule 2 set forth herein (the "Put Purchase Price"), on the date (the "Valuation Date") that is the last day of the calendar quarter that ended immediately prior to **the earlier of** (i) the expiration of the original term of Simons Employment Agreement set forth in the MIPA, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement, or **(iii) the third anniversary of this Agreement, in all cases (i, ii and iii aforesaid) until the fifth anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion**.

(*Id.* at ¶¶ 16-17 (emphasis added).)[2] The Put Purchase Price is calculated as 25% of the Gross Revenues for the 12-month period ending on the Valuation Date. (*Id.* at ¶ 18.) RCCB is not alleged to have had any involvement in drafting the Put and Call Agreement. (*Id.* at ¶¶ 15-18.)

On June 30, 2011, the Put and Call Agreement was amended to extend the time to exercise the Put Option (the "2011 Put and Call Amendment"):

> Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons as of the date of exercise of the Put Option for an aggregate purchase price equal to an amount in U.S. Dollars that is as set forth in Schedule 2 set forth herein (the "Put Purchase Price"), on the date (the "Valuation Date") that is the last day of the calendar quarter that ended immediately prior to **the earlier of** (i) the expiration of the term of Simons Employment Agreement set

---

[2] The relevant language at issue in this case falls under subsection (iii) in each of the amendments to the Put and Call Agreement. Each amendment also contains the bolded clause "the earlier of" preceding (i)-(iii).

> forth in the MIPA as such term may be extended by continuous employment of Simons, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement, or **(iii) the fourth anniversary (i.e., 1/2/2011) of this Agreement, in all cases (i and ii aforesaid) until the ninth anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion**.

(*Id.* at ¶ 19 (emphasis added).)[3] RCCB is not alleged to have had any involvement in drafting the 2011 Put and Call Amendment. (*Id.*)

In July 2014, RCCB was retained to represent RDS as outside counsel with regard to certain employment agreements and contractual issues. (*Id.* at ¶ 30.) RCCB's engagement letter with RDS specifies that Plaintiff was not RCCB's client:

> Definition of Client
> Our client in this engagement is RDS Vending. Our agreement to represent RDS Vending is not an agreement to represent any related entities, or any officers, directors, shareholders or employees in their individual capacities, unless we have specifically agreed to do so elsewhere in this letter or by separate written agreement.

(*Id.* at Ex. 4, p. 2.) In 2015, Plaintiff claims that RCCB was engaged to take the "initial 'laboring oar' in preparing amendments extending [Plaintiff's] Put Option . . . , **with the same rights**," for an additional term until Plaintiff's retirement in January 2021. (*Id.* at ¶ 37 (emphasis added).) In other words, RCCB was allegedly engaged to extend the timing that the Put Option could be exercised. (*Id.*) Plaintiff does not allege that RCCB was engaged to rewrite the entire Put and Call Agreement or alter the rights that were previously agreed upon by Plaintiff and Brown. (*Id.*) Plaintiff claims that Brown was represented by Buchanan Ingersoll & Rooney ("Buchanan") during the process of drafting the 2015 Put and Call Amendment. (*Id.*)

Plaintiff claims that a November 18, 2015 draft ("2015 Draft Amendment"), that was allegedly prepared by RCCB, contained the language that Plaintiff wanted in the final version of

---

[3] Plaintiff claims in paragraph 19 that this amendment occurred on March 2, 2011; however, the amendment cited by Plaintiff in support of this statement has an execution date of June 30, 2011. (Am. Compl. at Ex. 2, p. 3.)

4

the 2015 Put and Call Amendment:

> Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons as of the date of exercise of the Put Option for an aggregate purchase price equal to an amount in U.S. dollars that is as set forth in Schedule 2 set forth therein (the "Put Purchase Price"), on the date (the "Valuation Date") that is the last day of the calendar quarter that ended immediately prior to **the earlier of** (i) the expiration of the term of Simons Employment Agreement set forth in the MI PA, as such term may be extended by continuous employment of Simons, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement, or **(iii) the ninth anniversary (i.e., January 2, 2016) of this Agreement until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion.**

(*Id.* at ¶¶ 42-44.) The 2015 Put and Call Amendment was executed on December 3, 2015. (*Id.* at ¶ 48.) For reasons unexplained by Plaintiff, the executed version of the 2015 Put and Call Amendment instead reads as follows:

> Simons shall have the right to put to Buyer and require Buyer to purchase all of the Option Interests owned by Simons as of the date of exercise of the Put Option for an aggregate purchase price equal to an amount in U.S. dollars that is as set forth in Schedule 2 set forth therein (the "Put Purchase Price"), on the date (the "Valuation Date") that is the last day of the calendar quarter that ended immediately prior to **the earlier of** (i) the expiration of the term of Simons Employment Agreement set forth in the MI PA, as such term may be extended by continuous employment of Simons, or (ii) the death or date of disability of Simons as defined in the Simons Employment Agreement, or **(iii) the date of this Amendment (i.e., December 3, 2015, in all cases (i and ii as aforesaid) until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement (the "Put Period"), at Simons' (or if applicable, his personal representative's) discretion.**

(*Id.* at Ex. 8, p. 2 (emphasis added).) The 2015 Put and Call Amendment also contains the following clause related to the Put Purchase Price:

> (ii) the Put Purchase Price **shall be the greater** of (A) the price that would be paid to Simons calculated based upon the Valuation Date (as defined above) and (B) the price that would be paid to Simons if the Valuation Date was the last day of the calendar month that ended immediately prior to the date on which Buyer pays of the Option Interests in full.

(*Id.* at Ex. 8, p. 2 (emphasis added).) The only signatories to the 2015 Put and Call Amendment

are Plaintiff and Brown. (*Id.* at Ex. 8, p. 4.)

Plaintiff exercised the Put Option in March 2020 and claimed the Valuation Date was December 31, 2019. (*Id.* at ¶ 54.) Brown claimed the Valuation Date was December 31, 2015. (*Id.* at ¶¶ 54-55.) Plaintiff now claims in this lawsuit, *inter alia*, that the 2015 Put and Call Amendment somehow drastically altered Plaintiff's rights under the Put and Call Agreement and has resulted in millions of dollars in damages. (*Id.* at ¶ 61.) Plaintiff claims that Brown's interpretation prevented him from receiving the benefit of over four years of growth of RDS. (*Id.* at ¶ 56.)

### III.   PROCEDURAL HISTORY AND PLAINTIFF'S CLAIMS

**A.   Procedural History**

On January 11, 2021, Plaintiff commenced this action against RCCB and Buchanan. (ECF No. 1.) On January 14, 2021, Plaintiff requested that RCCB waive service of process and RCCB returned a service waiver on the same day. (*See* Exhibit A.) Plaintiff filed an Amended Complaint on February 22, 2021. (ECF No. 5.) This motion is timely filed pursuant to Fed. R. Civ. P. 15(a)(3).

**B.   Plaintiff's Amended Complaint**

Plaintiff asserts three claims against RCCB: (1) Count I - Breach of Fiduciary Duty; (2) Count II - Professional Negligence; and (3) Count III - Breach of Contract.[4]

**1.   Count I – Breach of Fiduciary Duty**

In Count I, Plaintiff alleges that RCCB violated Pennsylvania Rule of Professional Conduct 1.7 and breached a fiduciary duty of loyalty to Plaintiff by failing to avoid a conflict of interest and by allegedly placing Brown's interests above Plaintiff's interests. (Am. Compl. ¶¶ 68-75.)

**2.   Count II – Professional Negligence**

In Count II, Plaintiff alleges that RCCB had a duty to exercise ordinary skill and knowledge

---

[4]   Count IV and Count V are brought solely against co-defendant Buchanan.

related to the practice of law and breached this duty by failing to avoid conflicts of interest by placing Brown's interests far above Plaintiff's interests, and inserting a Valuation Date provision that harmed Plaintiff for the benefit of Brown. (*Id.* at ¶¶ 76-80.)

### 3. Count III – Breach of Contract

In Count III, Plaintiff alleges that RCCB had a duty to exercise ordinary skill and knowledge related to the practice of law and breached this duty by failing to avoid conflicts of interest by placing Brown's interests far above Plaintiff's interests, and inserting a Valuation Date provision that harmed Plaintiff for the benefit of Brown. (*Id.* at ¶¶ 81-89.)

## IV. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts conduct a two-part analysis to determine whether dismissal is appropriate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiffs have a "plausible claim for relief." *Id.* at 211. "Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

## V. ARGUMENT

**A. Plaintiff's claims are barred by the statute of limitations.**

The statute of limitations for breach of fiduciary duty and professional negligence is two

7

years. 42 Pa.C.S.A. § 5524; *Edwards v. Duane, Morris & Heckscher, LLP*, No. CIV.A. 01-4798, 2002 WL 32348269, at *5-7 (E.D. Pa. Aug. 15, 2002). The statute of limitations for breach of contract actions is four years. 42 Pa.C.S.A. § 5525; *Edwards*, 2002 WL 32348269, at *6.

"Pennsylvania favors strict application of the statutes of limitation." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572-73 (Pa. Super. Ct. 2007) (citation omitted). "Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause." *Id.* at 573. "Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute." *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa. Super. Ct. 2003), *aff'd*, 881 A.2d 1266 (Pa. 2005). "[T]he determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination." *Id.* at 444; *see also Edwards*, 2002 WL 32348269, at *7 (dismissing breach of fiduciary duty and legal malpractice claims as time-barred).

Here, while Plaintiff asserts multiple theories of recovery, each claim is grounded on RCCB's alleged violation of its duty of loyalty and duty to avoid conflicts of interest with respect to the negotiations and drafting of the 2015 Put and Call Amendment. (Am. Compl. ¶¶ 68-89.) RCCB is not alleged to have had any involvement with the Put and Call Agreement after the 2015 Put and Call Amendment was executed. The 2015 Put and Call Amendment was executed by Plaintiff "intending to be legally bound" on December 3, 2015. (*Id.* at ¶ 48 & Ex. 8, p. 1.) Plaintiff is a sophisticated investor and an experienced and successful businessman and presumably read the 2015 Put and Call Amendment before he executed it. (*Id.* at ¶¶ 1, 13, 14.) Any breach by RCCB could have only occurred prior to December 3, 2015. Plaintiff's malpractice claims arising out of this transaction are thus barred by the statute of limitations as Plaintiff did not file this case until

January 11, 2021—i.e., over five years after RCCB's alleged breach of its duty of loyalty.

The discovery rule cannot toll the statute of limitations on Plaintiff's claims. Plaintiff was aware of the alleged conflicts about which he now complains as of December 3, 2015. Plaintiff has known that RCCB represented RDS since July 2014. (*Id.* at ¶ 30.) Plaintiff does not allege that he learned any new facts about RCCB since December 3, 2015. Instead, Plaintiff seeks to impute liability on RCCB due to Brown's interpretation of the Put and Call Agreement in March 2020. The discovery rule cannot manufacture a conflict of interest five years after the fact. RCCB has never represented Brown and has no control over how Brown interprets the Put and Call Agreement. Plaintiff does not allege otherwise. Further, the Put and Call Agreement has been at the forefront of Plaintiff's mind since at least March 2019 when Plaintiff filed an arbitration demand against Brown that implicated the Put and Call Agreement. *See Simons v. Brown*, 444 F. Supp. 3d 642, 647-48 (E.D. Pa. 2020) (confirming arbitration award).[5] If Plaintiff had concerns about RCCB's alleged conflicts, he could have filed his claims at any time between December 3, 2015 and December 3, 2019. But he did not. Accordingly, Plaintiff's claims against RCCB are time barred and should be dismissed.

**B.      Plaintiff fails to plead the existence of an attorney-client relationship.**

Plaintiff's claims require that he prove he had an attorney-client relationship with RCCB. *See Dille v. Geer*, No. CV 20-924, 2020 WL 7624835, at *14 (E.D. Pa. Dec. 22, 2020) (explaining under Pennsylvania law a breach of fiduciary duty claim requires an attorney-client relationship); *Krauss v. Claar*, 879 A.2d 302, 308 (Pa. Super. Ct. 2005) ("[I]n Pennsylvania, . . . a claim against an attorney for either legal malpractice or breach of an attorney-client agreement, must [generally]

---

[5]      Judge McHugh's opinion was entered on March 16, 2020—the same month that Plaintiff exercised his Put Option. (Am. Compl. ¶ 54.) As noted in Judge McHugh's opinion, Plaintiff was represented by Bochetto & Lentz during this time.

be asserted by the attorney's actual client.") "Absent an express contract, an implied attorney-client relationship will be found only if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him." *Cost v. Cost*, 677 A.2d 1250, 1254 (Pa. Super. Ct. 1996).

The only written contract involving RCCB expressly disclaims any attorney-client relationship between Plaintiff and RCCB:

> Definition of Client
> Our client in this engagement is RDS Vending. Our agreement to represent RDS Vending is not an agreement to represent any related entities, or any officers, directors, shareholders or employees in their individual capacities, unless we have specifically agreed to do so elsewhere in this letter or by separate written agreement.

(Am. Compl. at Ex. 4, p. 2.) Consistent with this understanding, Plaintiff pleads that RCCB was engaged to represent RDS as to the negotiations related to the 2015 Put and Call Amendment. (*Id.* at ¶ 41.) Nonetheless, Plaintiff now claims he had an implied attorney-client relationship with RCCB. But Plaintiff's subjective belief that an attorney-client relationship existed is not enough to withstand a motion to dismiss. *See Cost*, 677 A.2d at 1254 ("[P]laintiff's belief that the defendants represented her interests was a **subjective** one, which is insufficient to overcome the grant of preliminary objections."); *Sebia v. McNees Wallace & Nurick, LLC*, No. 1403 EDA 2013, 2014 WL 10965705, at *7 (Pa. Super. Ct. Mar. 11, 2014) ("[T]he plaintiff's subjective belief of an attorney-client relationship is not a sufficient basis for finding that it actually exists."). Plaintiff is a sophisticated investor and an experienced and successful businessman. (Am. Compl. ¶¶ 1, 13, 14.) He knew that RCCB did not represent him personally during the process of drafting the 2015 Put and Call Amendment and he consented to such a process.

Nor is RCCB's attorney-client relationship with RDS imputed to Plaintiff. A law firm retained by an entity does not concomitantly enter into an attorney-client relationship with its members or senior employees. *See Rauser v. Freeman*, No. CIV.A. 88-9881, 1995 WL 295473, at *1 (E.D. Pa. May 2, 1995), *aff'd*, 77 F.3d 463 (3d Cir. 1996) (holding "a lawyer who represents an entity does not automatically represent the entity's constituents"). Pennsylvania Rule of Professional Conduct 1.13(a) provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Rule 1.13(a) thus "makes it clear that an attorney representing a corporation generally represents the corporation and not the corporation's shareholders, officers or directors." *Robertshaw v. Pudles*, No. CIV.A. 11-7353, 2014 WL 1789307, at *1 & n.2 (E.D. Pa. May 6, 2014); *see also Heldring v. Lundy Beldecos & Milby, P.C.*, 151 A.3d 634, 641 (Pa. Super. Ct. 2016) (affirming dismissal of legal malpractice claims brought by president of entity because firm only represented entity and not president on an individual basis). For all of these reasons, Plaintiff cannot establish that an attorney-client relationship existed between Plaintiff and RCCB. Accordingly, his claims should be dismissed.

**C.     Count I fails because RCCB did not have a conflict of interest.**

"At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992); *see also Gorski v. Smith*, 812 A.2d 683, 711 (Pa. Super. 2002) (vacating judgment entered after jury verdict on fiduciary duty claim against former attorneys because evidence did not show a conflict of interest existed). "To establish a breach of fiduciary duty, the plaintiff must prove: (1) the defendants negligently or intentionally failed to act in good faith and solely for their benefit; (2) he suffered injury; and (3) the defendants' failure to act solely for his benefit was a

11

real factor in bringing about his injury." *Nkansah v. Kleinbard LLC*, No. CV 19-4472, 2020 WL 920269, at *6 (E.D. Pa. Feb. 26, 2020) (citations omitted).

Here, even assuming that RCCB was representing Plaintiff in the negotiations related to the 2015 Put and Call Amendment, Plaintiff has not alleged any facts demonstrating that RCCB was conflicted in its representation. Plaintiff and Brown are the only signatories to the 2015 Put and Call Amendment. (Am. Compl. at Ex. 8, p. 4.) Buchanan represented Brown in these negotiations. (*Id.* at ¶ 37.) Plaintiff does not allege that RCCB concurrently represented Brown or had represented Brown in the past. And, as explained above, RCCB's representation of RDS does impute an attorney-client relationship with Brown. *See* Pa. R. of Prof. Cond. 1.13(a). Because RCCB did not represent Brown—i.e., the only other party to the 2015 Put and Call Amendment— there was no conflict of interest that RCCB needed to disclose or avoid. Accordingly, Plaintiff's breach of fiduciary duty claim fails and should be dismissed. *See Nkansah*, 2020 WL 920269, at *7 (granting motion to dismiss breach of fiduciary duty claim where there were no facts demonstrating attorneys were disloyal, represented a competitor, or otherwise acted in bad faith).

**D.     Count II fails because it is a repackaging of Plaintiff's breach of fiduciary duty claim.**

Professional negligence claims "bear the traditional elements of a general claim of negligence—duty, breach, causation and damages." *Cost*, 677 A.2d at 1254. Importantly, "[a] duty of care is distinct from a duty of loyalty." *Nkansah*, 2020 WL 920269, at *6. "Courts applying Pennsylvania law interpret a claim for breach of fiduciary duty in the context of legal malpractice as a claim for breach of the duty of loyalty, not the duty of care." *Id.*

In Count II, Plaintiff alleges that RCCB had a duty to exercise ordinary skill and knowledge related to the practice of law and breached this duty by failing to avoid conflicts of interest by placing Brown's interests far above Plaintiff's interests, and inserting a Valuation Date provision

12

that harmed Plaintiff for the benefit of Brown (Am. Compl. ¶¶ 76-80.) In other words, Plaintiff does not allege that RCCB breached a duty of care. Instead, Plaintiff simply repackages his breach of fiduciary duty/duty of loyalty claim as a professional malpractice claim. On this basis alone, Count II should be dismissed as duplicative of Count I.

Further, RCCB did not breach any duty of care. Plaintiff does not allege that RCCB was engaged to rewrite the entire Put and Call Agreement or change the rights that were previously agreed upon by Plaintiff and Brown in their earlier contracts. (*Id*.) Instead, Plaintiff claims that RCCB was engaged to extend the timing that the Put Option could be exercised and preserve all other rights from the Put and Call Agreement. (*Id.* at ¶ 37.) That's exactly what happened. A summary of the amendments to the Put and Call Agreement is set forth below:

| Date | Language in section (iii) | Put Period |
|---|---|---|
| January 2, 2007 (executed) | the earlier of . . . (iii) the third anniversary [i.e., January 2, 2010] of this Agreement, in all cases (i, ii and iii aforesaid) until the fifth anniversary [i.e. January 2, 2012] of this Agreement (the "Put Period") . . . . | the earlier of . . . (iii) January 2, 2010 until January 2, 2012 |
| June 30, 2011 (executed) | the earlier of . . . (iii) the fourth anniversary (i.e., 1/2/2011) of this Agreement, in all cases (i and ii aforesaid) until the ninth anniversary [i.e., January 2, 2016] of this Agreement (the "Put Period") . . . . | the earlier of . . . (iii) January 2, 2011 until January 2, 2016 |
| November 18, 2015 (not executed) | the earlier of . . . (iii) the ninth anniversary (i.e., January 2, 2016) of this Agreement until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement (the "Put Period") . . . . | the earlier of . . . (iii) January 2, 2016 until January 2, 2021 |
| December 3, 2015 (executed) | the earlier of . . . (iii) the date of this Amendment (i.e., December 3, 2015, in all cases (i and ii as aforesaid) until the fourteenth (i.e., January 2, 2021) anniversary of this Agreement (the "Put Period") . . . . | the earlier of . . . (iii) December 3, 2015 until January 2, 2021 |

Accordingly, Brown's argument that the Valuation Date was fixed at the start of the Put Period could have been made under any of the agreements. Plaintiff's issue is with the **original version** of the Put and Call Agreement—an agreement that RCCB had no involvement in drafting. Finally, the 2015 Put and Call Amendment expressly provides that Plaintiff would receive "the greater of" RDS's value as calculated either on December 3, 2015 (the start of the Put Period) or

the date Brown closes on the purchase of Plaintiff's shares (i.e., the present date). (Am. Compl. at Ex. 8, p. 2.) Accordingly, Plaintiff was not prevented from receiving the benefit of RDS's growth. (*See id.* at ¶ 56.) Plaintiff just exercised the Put Option at the wrong time when RDS's value had declined.[6]

In sum, the 2015 Put and Call Amendment extended the timing that the Put Option could be exercised and preserved all other rights from the Put and Call Agreement. This is all that RCCB was allegedly engaged to do. (*Id.* at ¶ 37.) For all of these reasons, RCCB did not breach a duty of care to Plaintiff.

**E.     Count III is barred by the gist of the action doctrine.**

When a plaintiff brings tort and contract claims for the same underlying conduct, a court must decide "whether the claim is truly one in tort, or for breach of contract." *Brenco Oil, Inc. v. Blaney*, No. CV 17-3938, 2017 WL 6367893, at *2 (E.D. Pa. Dec. 13, 2017) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)). To do so, the court must decide the so-called "gist" of the action by looking to "the nature of the duty alleged to have been breached." *Id.* (citing *Bruno*, 106 A.3d at 64). A legal malpractice claim "sounds in negligence unless it is alleged that the [attorney] breached one of the 'specific executory promises which comprise the contract.'" *New York Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x 70, 73 (3d Cir. 2016) (citing *Bruno*, 106 A.3d at 70). "Where the claim is based on the same conduct underlying the negligence claim, rather than the defendant's breach of a specific contract provision, it sounds in tort, not contract." *Nkansah*, 2020 WL 920269, at *4 (citing *Seidner v. Finkelman*, No. 716 EDA 2017, 2018 WL 4178147, at *5 (Pa. Super. Aug. 31, 2018) (applying gist of the action doctrine to find appellant's legal malpractice

---

[6] As explained in co-defendant Buchanan's motion to dismiss, COVID was likely the cause of RDS's diminution in value in 2020. (ECF No. 6 at pp. 21-22.) RCCB adopts the arguments made by Buchanan with respect to this issue as they apply with equal force to RCCB. RCCB also adopts Buchanan's damages argument as it also applies with equal force to RCCB. (*Id.* at p. 23.)

claim sounded in tort because she only challenged manner in which attorneys achieved her objectives and whether their advice was within standard of care)).

Here, Plaintiff does not claim that RCCB breached any "specific executory promises which comprise the contract." *See Edelstein*, 637 F. App'x at 73. Rather, in support of his claim for breach of contract, Plaintiff alleges that RCCB had a duty to exercise ordinary skill and knowledge related to the practice of law and breached this duty by failing to avoid conflicts of interest by placing Brown's interests far above Plaintiff's interests, and inserting a Valuation Date provision that harmed Plaintiff for the benefit of Brown. (*Id.* at ¶¶ 81-89.) The gist of Plaintiff's allegations against RCCB sound in tort (*i.e.*, for a breach of a duty of loyalty/failure to avoid conflicts of interest), rather than contract. Accordingly, Count III should be dismissed under the gist of the action doctrine. *Nkansah*, 2020 WL 920269, at *4; *Brenco Oil*, 2017 WL 6367893, at *5.

## VI.   CONCLUSION

For all of the reasons stated above, RCCB respectfully requests that the Court grant RCCB's Motion to Dismiss and dismiss Plaintiff's Amended Complaint in its entirety and with prejudice.

Respectfully submitted,

Date:  March 15, 2021

*/s/ Howard M. Klein*
Howard M. Klein, Esquire
Christopher M. Lucca, Esquire
Conrad O'Brien PC
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
*Attorneys for Defendant*
*Royer Cooper Cohen Braunfeld LLC*

15