**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALAN SIMONS,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 21-129** |
| **ROYER COOPER COHEN BRAUNFELD, L.L.C.**, *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                           **February 28, 2022**

Plaintiff Alan Simons has filed this lawsuit for legal malpractice relating to the amendment of a contract between Simons and his former business partner, John Brown. Simons contends that two law firms, Royer Cooper Cohen Braunfeld, LLC, and Buchanan Ingersoll & Rooney, P.C., improperly placed Brown's interests before his own when drafting and negotiating an amendment to a Put-Call Agreement governing the disposition of shares in RDS Vending, LLC, the company Simons and Brown co-owned. Both law firms have moved to dismiss Simons's Amended Complaint. For the reasons stated below, the Buchanan firm's motion will be granted in part and denied in part, and the Royer firm's motion will be granted in part and denied in part.

### I.  LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement" of facts demonstrating "that the pleader is entitled to relief."[1] When evaluating a

---

[1] Fed. R. Civ. P. 8(a)(2).

motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the claim must be plausible, meaning that "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] At this stage, "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[3] The Court will consider "the complaint itself, exhibits attached to the complaint, matters of public record, and 'undisputedly authentic documents that a defendant attaches as exhibits to a motion to dismiss if the plaintiff's claims are based on those documents.'"[4]

## II.   FACTS ALLEGED IN THE AMENDED COMPLAINT[5]

Until 2007 Simons was the sole owner of RDS, a vending machine supplier.[6] In 2007, Simons sold fifty percent of the company to Brown, but maintained control over the business's operations.[7] In conjunction with the sale, Simons and Brown executed a Put-Call Agreement that established a mechanism through which Simons could require Brown to purchase Simons's shares of the company.[8] The Put-Call Agreement was amended in 2011 to extend the deadlines in the original contract.[9]

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[3] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[4] *Watson v. Secretary Pa. Dept. Corr.*, 436 F. App'x 131, 133 (3d Cir. 2011) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d. Cir. 1993) (alterations omitted).

[5] These facts, which Simons alleges in his Amended Complaint, are accepted as true for the purposes of evaluating Defendants' motions to dismiss.

[6] Am. Compl. [Doc. No. 5] ¶ 14.

[7] Am. Compl. [Doc. No. 5] ¶ 15.

[8] Am. Compl. [Doc. No. 5] ¶ 17.

[9] Am. Compl. [Doc. No. 5] ¶ 19.

In 2013, the Buchanan firm and RDS entered into a fee agreement, signed by Simons, in which the firm agreed to "provide legal services to the Company in connection with pursuing vending opportunities with the Philadelphia Airport and other matters as to which we accept your request for legal representation."[10] The Buchanan firm subsequently provided legal advice concerning RDS, other businesses that Simons owned, and Simons's personal matters.[11] Simons provided information about his personal finances to the Buchanan firm in the course of this representation.[12] In 2014, "Simons retained the Royer Firm to represent RDS 'to act as outside counsel with regard to certain employment agreements, contractual issues, and for such other matters as we may agree from time to time.'"[13]

When Simons and Brown decided to amend the Put-Call Agreement in 2015, Simons asked the Royer firm to prepare an amended agreement that extended the dates and preserved the same rights as the prior agreement.[14] Brown retained the Buchanan firm to represent him in his personal capacity with respect to the Put-Call Agreement.[15] Neither firm informed Simons of the possibility of a conflict of interest, and neither firm obtained waivers from Simons or RDS for services provided in this matter.[16] However, an attorney from the Royer firm told Simons, "don't worry we'll take care of you" with respect to the negotiations.[17]

---

[10] Am. Compl. Ex. 3 [Doc. No. 5-3] at ECF page 1.

[11] Am. Compl. [Doc. No. 5] ¶ 21.

[12] Am. Compl. [Doc. No. 5] ¶ 23.

[13] Am. Compl. [Doc. No. 5] ¶ 30.

[14] Am. Compl. [Doc. No. 5] ¶ 37.

[15] Am. Compl. [Doc. No. 5] ¶ 37.

[16] Am. Compl. [Doc. No. 5] ¶¶ 39, 40.

[17] Am. Compl. [Doc. No. 5] ¶ 41 (emphasis omitted).

In November 2015, an attorney at the Buchanan firm sent proposed redline edits of the amended Put-Call Agreement to Brown.[18] Brown forwarded this email to Simons, who in turn forwarded it to an attorney at the Royer firm.[19] The amended agreement that Simons signed on December 3, 2015, included language that set the valuation date of RDS. Simons alleges that the valuation date in the agreement that he signed differed from a prior draft, that both firms concealed this change to benefit Brown, and that the change caused Simons to lose millions of dollars when Simons exercised his put option in March 2020.[20] Simons became aware of the damage that the changed valuation date caused on or after March 17, 2020.[21]

Based on these allegations, Simons asserts claims for breach of fiduciary duty, professional negligence, and breach of contract against both Defendants.[22] The Amended Complaint also asserts claims for negligent misrepresentation and tortious interference with contractual relations against the Buchanan firm.[23]

## III. DISCUSSION

### A. Statutes of Limitations

Defendants first argue that Plaintiff's claims should be dismissed as untimely under the relevant statutes of limitations.[24] To determine whether Plaintiff's claims are timely, it is necessary to "look to Pennsylvania law [and] predict[] how the Pennsylvania Supreme Court

---

[18] Am. Compl. [Doc. No. 5] ¶ 43.

[19] Am. Compl. Ex. 7 [Doc. No. 5-7] at ECF pages 1–2.

[20] Am. Compl. [Doc. No. 5] ¶¶ 49, 51, 54, 57, 59.

[21] Am. Compl. [Doc. No. 5] ¶ 57.

[22] Am. Compl. [Doc. No. 5] ¶¶ 67–89.

[23] Am. Compl. [Doc. No. 5] ¶¶ 90–99.

[24] The parties agree that Pennsylvania law applies to all claims in this diversity action.

would resolve the statute of limitations issue."[25] Under Pennsylvania law, there is a two-year statute of limitations for legal malpractice claims that sound in tort.[26] Legal malpractice claims based on breach of contract are subject to a four-year statute of limitations.[27] Determining whether a claim is timely is "a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury."[28] "The trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty."[29]

In situations "[w]here a plaintiff could not reasonably have discovered his injury or its cause," the discovery rule applies.[30] Under such circumstances, the statute of limitations on "legal malpractice actions begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause."[31] "Though the reasonable diligence test accounts for the different capacities of different plaintiffs, the test is nonetheless an objective one."[32] The Third Circuit recognizes that "in the context of the discovery rule, . . . when 'the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal.'"[33]

---

[25] *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citation omitted).

[26] *Id.* (citing 42 Pa.C.S.A. § 5524).

[27] *Mahonski v. Engel*, 145 A.3d 175, 182 (Pa. Super. Ct. 2016).

[28] *Knopick*, 639 F.3d at 606 (citation omitted).

[29] *Id.* at 607 (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. Ct. 2007)).

[30] *Id.* (citing *Wachovia Bank, N.A.*, 935 A.2d at 572–74).

[31] *Id.* (citing *Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606, 611 (2000)).

[32] *Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013); *see Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018) (noting that the reasonable diligence standard for application of the discovery rule is objective).

[33] *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d. Cir. 2014).

The Court therefore must determine whether, on its face, Plaintiff's Amended Complaint demonstrates that his claims are time-barred. Plaintiff alleges that he first discovered his injury around March 17, 2020, when he exercised his put option.[34] The Amended Complaint alleges that "Simons' knowledge of the injury that flowed from that impropriety was not known, and could not have been known, by Simons, a non-attorney, and this injury was not readily ascertainable prior to that time under settled and controlling law."[35] Plaintiff argues that the discovery rule should toll the relevant statutes of limitations because Defendants concealed the change to the Put-Call Agreement and that he did not discover the harm until March 2020.[36]

Defendants assert that Plaintiff's claims are time-barred because the alleged breach of duty occurred in 2015 with the execution of the Second Amendment to the Put-Call Agreement.[37] The Buchanan firm contends that Simons signed the amended agreement in 2015, and that he was therefore in possession of the language that forms the basis of his claims at that time.[38] The Royer firm adds that "Plaintiff is a sophisticated investor and an experienced and successful businessman and presumably read the 2015 Put and Call Amendment before he executed it."[39]

---

[34] Am. Compl. [Doc. No. 5] ¶ 57.

[35] Am. Compl. [Doc. No. 5] ¶ 57.

[36] Pl.'s Mem. Law. Response Buchanan Def.'s Mot. Dismiss [Doc. No. 10] at 17; Pl.'s Mem. Law. Response Royer Def.'s Mot. Dismiss [Doc. No. 12] at 16.

[37] Buchanan Mem. Law Supp. Mot. Dismiss [Doc. No. 6] at 12–14; Royer Mem. Law Supp. Mot. Dismiss [Doc. No. 9-1] at 7–9.

[38] Buchanan Mem. Law Supp. Mot. Dismiss [Doc. No. 6] at 13–14.

[39] Royer Mem. Law Supp. Mot. Dismiss [Doc. No. 9-1] at 8.

The Court cannot determine as a matter of law that the discovery rule does not apply here. The Put-Call Agreement was a legal document, and the Buchanan firm acknowledges that the language which established the valuation date was not straightforward.[40] Whether Plaintiff failed to exercise reasonable diligence that would have allowed him to discover his potential legal claims before March 2020 is a fact-intensive inquiry, and the Court will not dismiss Plaintiff's claims as time-barred at this juncture.

### B.  Failure to State a Claim

#### 1.  *Legal Malpractice Claims*

##### a.  Existence of an Attorney-Client Relationship

Pennsylvania courts recognize that "[t]he threshold element of any legal malpractice claim, whether brought in contract or tort, is the existence of an attorney-client relationship."[41] This relationship can be express or implied. An implied attorney-client relationship exists where "1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him."[42] A subjective belief that an attorney is representing the plaintiff is insufficient.[43] A demonstration of "a specific undertaking by the

---

[40] *See* Buchanan Mem. Law Supp. Mot. Dismiss [Doc. No. 6] at 4.

[41] *Heldring v. Lundy Delecos & Milby, P.C.*, 151 A.3d 634, 641 (Pa. Super. Ct. 2016) (citing *McHugh v. Litvin, Blumberg, Matusow & Young*, 574 A.2d 1040, 1042 (Pa. 1990)).

[42] *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. Ct. 1993) (citing *Sheinkopf v. Stone*, 927 F.2d 1259 (1st Cir. 1991)).

[43] *Atkinson*, 622 A.2d at 986.

attorney furnishing professional services" may also satisfy this requirement.[44] Simons personally did not have a written agreement with either law firm to represent him in his personal capacity, so the Court must determine whether Simons has alleged the existence of an implied relationship.[45]

> i. The Buchanan Firm

The Amended Complaint alleges that Plaintiff's partner, John Brown, "retained the Buchanan Firm to represent Brown, individually and adversely to Simons, in negotiations for a Second Amendment to the Put and Call Agreement."[46] Simons argues that he had previously requested advice from the Buchanan firm on personal matters, that the firm had professional competence in these areas, and that the firm provided advice on these matters.[47] The Buchanan firm contends that it did not represent Simons in his personal capacity at any point, and further argues that Simons's belief that Buchanan represented him was merely subjective.[48]

Although the Amended Complaint and the attached exhibits provide little context as to the scope of the Buchanan firm's alleged representation of Simons in his individual capacity,[49] drawing all inferences in favor of Plaintiff, the Amended Complaint contains sufficient factual

---

[44] *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983).

[45] *See* Am. Compl. Ex. 3 [Doc. No. 5-3] at ECF page 2 ("The Company is our sole client with respect to this engagement."); Am. Compl. Ex. 4 [Doc. No. 5-4] at ECF page 2 ("Our client in this engagement is RDS Vending. Our agreement to represent RDS Vending is not an agreement to represent any related entities, or any officers, directors, shareholders, or employees in their individual capacities, unless we have specifically agreed to do so elsewhere in this letter or by separate written agreement.").

[46] Am. Compl. [Doc. No. 5] ¶ 37 (emphasis omitted).

[47] *See* Am. Compl. [Doc. No. 5] ¶ 23.

[48] Buchanan Mem. Law Supp. Mot. Dismiss [Doc. No. 6] at 18–19.

[49] *See* Am. Compl. [Doc. No. 5] ¶¶ 21, 23, 26. The examples provided in the Amended Complaint do not indicate whether the Buchanan firm's representation of Simons outside his capacity as a representative of RDS occurred before or after the execution of the Second Amendment to the Put-Call Agreement.

allegations to indicate that an implied attorney-client relationship may have existed between Simons and the Buchanan firm. Moreover, depending on the nature and scope of the services the Buchanan firm provided to Simons, Simons may have had objectively reasonable grounds to believe that the Buchanan firm represented him during or prior to the Put-Call Agreement negotiations in 2015. Accordingly, the Amended Complaint plausibly pleads that the Buchanan firm and Simons had an implied attorney-client relationship.

ii.   The Royer Firm

The Royer firm contends that it only represented RDS during negotiations over the Second Amendment to the Put-Call Agreement, not Simons himself. However, Plaintiff alleges that counsel from the Royer firm "promised Simons 'don't worry we'll take care of you'" with respect to the Put-Call Agreement negotiations in 2015.[50] If the Royer firm made this assurance, Simons could have had the objectively reasonable belief that the Royer firm was representing him regarding negotiations over the amended agreement. Simons alleges that he asked the Royer firm to represent his interests during the negotiations, that the services he sought were within the Royer firm's professional competency, that the Royer firm expressly or impliedly agreed to assist Simons, and that Simons reasonably believed the Royer firm represented his interests.[51] At this early stage, drawing all inferences in favor of Plaintiff, Simons has sufficiently pled that he and the Royer firm had an attorney-client relationship.

---

[50] Am. Compl. [Doc. No. 5] ¶ 41 (emphasis omitted).

[51] *See Atkinson*, 622 A.2d at 986.

9

b. <u>Breach of Fiduciary Duty</u>

Plaintiff first asserts a malpractice claim based on breach of a fiduciary duty. "At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable."[52] A claim for breach of fiduciary duty requires a plaintiff to demonstrate that: "(1) the defendants negligently or intentionally failed to act in good faith and solely for their benefit; (2) he suffered injury; and (3) the defendants' failure to act solely for his benefit was a real factor in bringing about his injury."[53]

The Royer firm argues that Simons has failed to plead a viable claim for breach of fiduciary duty because he provides no explanation for his allegation that representing both RDS and Simons during these negotiations constituted a concurrent conflict of interest. Plaintiff asserts that the conflict of interest "is self-evident" and that dual representation compromised the Royer firm's ability to show "absolute loyalty to Simons."[54] However, as the Royer firm notes, the Amended Complaint does not explain how Simons's interests were directly adverse to those of the company, or how such dual representation, assuming it existed, materially limited the Royer firm's ability to represent Simons.[55] This is especially true as the

---

[52] *Maritrans GP Inc. v. Pepper, Hamilton, & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). Under Pennsylvania law, courts "interpret a claim for breach of fiduciary duty in the context of legal malpractice as a claim for breach of the duty of loyalty, not the duty of care." *Nkansah v. Kleinbard LLC*, No. 19-4472, 2020 WL 920269, at *6 (E.D. Pa. Feb. 26, 2020) (citation omitted). When a relationship implicates a duty of loyalty, "the agent must act with the utmost good faith in furthering and advancing the principal's interests, including a duty to disclose to the principal all relevant information." *Basile v. H&R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. Super. Ct. 2000).

[53] *Nkansah*, No. 2020 WL 920269, at *6 (citations omitted).

[54] Pl.'s Mem. Law. Response Royer Def.'s Mot. Dismiss [Doc. No. 10] at 16 n.1.

[55] Royer Reply Supp. Mot. Dismiss [Doc. No. 14] at 2; Pa. R. Prof. Conduct 1.7(a). Plaintiff argues that "there is an inherent conflict of interest where an attorney purports to represent both a corporation and an individual shareholder where (as here) those interests diverge." Pl.'s Mem. Law. Response Royer Def.'s Mot. Dismiss [Doc. No. 12] at 26. However, Plaintiff cites a case involving general counsel for the Pennsylvania State University's

Put-Call Agreement was between Simons and Brown and concerned their individual financial interests in selling or buying each other's stake in the business. Plaintiff's breach of fiduciary duty claim against the Royer firm will therefore be dismissed.

As the Amended Complaint asserts that Simons had an attorney-client relationship with the Buchanan firm, that the Buchanan firm represented Brown in the Put-Call Agreement negotiations, and that this representation created a conflict of interest because Brown's interests were directly adverse to Simons's interests, these facts support an inference that the Buchanan firm was disloyal to Simons. The Buchanan firm's motion to dismiss Plaintiff's breach of fiduciary duty claim will be denied.

c.   Professional Negligence Claim

Defendants also seek to dismiss Plaintiff's professional negligence claim. A professional negligence claim under Pennsylvania law requires the plaintiff to demonstrate "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) the attorney's failure to exercise the requisite skill and knowledge was the proximate cause of damage to the plaintiff."[56] "An essential element of a legal malpractice claim is proof of actual loss rather than a breach of a

---

representation of a former university employee at a grand jury proceeding regarding child abuse perpetrated by Gerald "Jerry" Sandusky. *See Com v. Schultz*, 133 A.3d 294 (Pa. Super. Ct. 2016). The Pennsylvania Superior Court held that the University's general counsel failed to properly advise the former employee that she was only representing him in an agency, rather than personal, capacity, and that the attorney breached attorney-client privilege by testifying before the grand jury regarding her communications with the former employee. *Id.* at 324–25. *Commonwealth v. Schultz* is factually distinct from this case and does not support the conclusion that a concurrent conflict of interest necessarily existed under these circumstances.

[56] *Calkins v. Butz*, No. 442 EPA 2016, 2017 WL 281023, at *5 (Pa. Super. Ct. Jan. 23, 2017) (citing *Bailey v. Tucker*, 621 A.2d 108, 112 (Pa. 1993)).

professional duty causing only nominal damages, speculative harm or the threat of future harm."[57]

The Royer firm argues that Plaintiff has failed to allege sufficient facts to demonstrate that simultaneous representation of Simons and RDS created a concurrent conflict of interest, but it does not address the allegations in the Amended Complaint that the firm concealed changes to the Second Amendment to the Put-Call Agreement, thereby causing injury to Simons.[58] When construed in the light most favorable to Plaintiff, Plaintiff's allegations support a claim for professional negligence. Simons has plausibly alleged that 1) Plaintiff and the Royer firm had an attorney-client relationship, 2) the Royer firm failed to exercise ordinary skill and knowledge by changing and concealing the effect of the language in the amended Put-Call Agreement, and 3) this change financially harmed Plaintiff.[59] Therefore, the Royer firm's motion to dismiss Plaintiff's professional negligence claim will be denied.

Likewise, the Amended Complaint, construed in the light most favorable to Plaintiff, plausibly pleads that Simons, 1) had an implied attorney-client relationship with the Buchanan firm, 2) the Buchanan firm failed to exercise ordinary skill and knowledge in its handling of the Second Amendment to the Put-Call Agreement, and 3) the changes caused Plaintiff injury. Although the Buchanan firm contends that Simons will be unable to prove causation or

---

[57] *Nkansah*, 2020 WL 920269, at *5 (citation omitted).

[58] *See* Am. Compl. [Doc. No. 5] ¶ 46.

[59] The Royer firm argues that it did not breach any duty of care because it simply changed the dates in the Put-Call Agreement to reflect the structure that existed in earlier iterations of the document. Royer Mem. Law Supp. Mot. Dismiss [Doc. No. 9-1] at 13. As the Court must focus on the facts as they are pled in the Amended Complaint, the Court declines to reach this issue at this time.

damages, this assessment is premature.[60] Accordingly, Plaintiff's professional negligence claim against the Buchanan firm may proceed.

        d.  <u>Breach of Contract Claim</u>

Defendants next argue that Plaintiff's breach of contract claim should be dismissed under the "gist of the action" doctrine. The gist of the action doctrine "ensure[s] that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract."[61] The doctrine also bars contract claims that are disguised as tort claims.[62] Pennsylvania law directs courts to examine "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint."[63] "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract."[64] Conversely, if "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[65] A legal malpractice "claim sounds in negligence unless it is alleged that the party breached one of the 'specific executory promises which comprise the contract.'"[66]

---

[60] *See Nkansah*, 2020 WL 920269, at *5–*6 (citation omitted) (noting that proving actual loss in a legal malpractice claim is "fact intensive"); Pl.'s Mem. Law. Response Buchanan Def.'s Mot. Dismiss [Doc. No. 10] at 20–23.

[61] *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014).

[62] *Nkansah*, 2020 WL 920269, at *3 (citing *Bruno*, 106 A.3d at 68).

[63] *Bruno*, 106 A.3d at 68.

[64] *Id.* (citations omitted).

[65] *Id.* (citations omitted).

[66] *N.Y. Cent. Mut. Ins. Co. v. Edelstein,* 637 F. App'x 70, 73 (3d Cir. 2016) (quoting *Bruno*, 106 A.3d at 70)).

Plaintiff's Amended Complaint fails to show that either firm breached any "specific executory promise" that would support a claim for breach of contract. Plaintiff contends that his fee agreements with the Royer and Buchanan firms outlined specific services that they were obliged to provide, but the terms of the fee agreements unambiguously demonstrate that the firms represented RDS rather than Simons in his individual capacity.[67] Plaintiff alleges that Defendants breached their obligation "to exercise the ordinary skill and knowledge related to the professional practice of law."[68] Despite Plaintiff's assertion that he made Defendants aware of his goals with respect to the Put-Call Agreement, there is no indication that Plaintiff gave

---

[67] The fee agreement between RDS and the Royer firm that Plaintiff has attached to the Amended Complaint states that:

> Our client in this engagement is RDS Vending. Our agreement to represent RDS Vending is not an agreement to represent any related entities, or any officers, directors, shareholders or employees in their individual capacities, unless we have specifically agreed to do so elsewhere in this letter or by separate written request.

Am. Compl. Ex. 4 [Doc. No. 5-4] at ECF page 2. The fee agreement between RDS and the Buchanan firm, which is also appended to the Amended Complaint, defines the scope of representation as follows:

> The Company is our sole client with respect to this engagement. Individuals or entities that are affiliated with the Company, such as its equity owners, members, officers, directors, parent entities, joint ventures, subsidiaries or other affiliates, are not clients of the Firm, unless we otherwise agree in writing.

Am. Compl. Ex. 3 [Doc. No. 5-3] at ECF page 2. "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties," which is "embodied in the writing itself." *Mitch v. XTO Energy, Inc.*, 212 A.3d 1135, 1138 (Pa. Super Ct. 2019) (citation omitted). Contractual interpretation requires "[t]he whole instrument[]" to "be taken together" to determine the parties' intent. *Id.* (citation omitted). A court will only look beyond the text where ambiguity exists. There is ambiguity in a contract when its terms "are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The plain meaning of the fee agreements, when read as a whole, indicate that the Royer firm and the Buchanan firm did not agree to represent Simons in his individual capacity. To the extent that Plaintiff argues that these fee agreements constitute express contracts in which the firms agreed to represent Plaintiff in an individual capacity, the Court cannot agree.

[68] Am. Compl. [Doc. No. 5] ¶ 86.

any specific instructions to the firms that they failed to follow.[69] Plaintiff's claim for breach of contract against the Royer and Buchanan firms will be dismissed.

### 2. Negligent Misrepresentation Claim against the Buchanan Firm

Plaintiff's Amended Complaint asserts two claims solely against the Buchanan firm, the first of which is a claim for negligent misrepresentation. Under Pennsylvania common law, a negligent misrepresentation claim requires the plaintiff to show:

> (1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation.[70]

The Pennsylvania Supreme Court has adopted Section 552 of the Restatement (Second) of Torts, "which 'sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the course of their own business activities.'"[71]

The Amended Complaint fails to plead a claim for negligent misrepresentation as Plaintiff alleges that the Buchanan firm neglected to disclose a material fact, not that the firm

---

[69] *See* Am. Compl. [Doc. No. 5] ¶ 42; Pl.'s Opp'n Mot. Dismiss Am. Compl. Def. Royer [Doc. No. 12] at 31; Pl.'s Opp'n Mot. Dismiss Am. Compl. Def. Royer [Doc. No. 12] at 26–27.

[70] *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021).

[71] *Azur v. Chase Bank, USA, Nat'l. Ass'n*, 601 F.3d 212, 223 (3d Cir. 2010) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285–86 (Pa. 2005)). The Pennsylvania Supreme Court has stated "that we do not view Section 552 as supplanting the common law tort of negligent misrepresentation, but rather, as clarifying the contours of the tort as it applies to those in the business of providing information to others." *Bilt-Rite Contractors*, Inc., 866 A.2d at 287. Section 552 concerns negligent misrepresentation, and provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bilt-Rite Contractors*, Inc., 866 A.2d at 273 n.1.

falsely represented a material fact.[72] Accordingly, Plaintiff's negligent misrepresentation claim will be dismissed.

> ### 3. Tortious Interference with Contractual Relations Claim against the Buchanan Firm

The Buchanan firm seeks to dismiss Plaintiff's claim for tortious interference with contractual relations. Under Pennsylvania law, a claim for tortious interference with existing contractual relations requires:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.[73]

In the Third Circuit, "attorneys are normally recognized as agents for their clients and are deemed to be the same party as their clients when performing their duties as lawyers within the course and scope of that representation."[74]

As the Buchanan firm negotiated the Put-Call Agreement on behalf of Brown, their client, this claim fails on the first prong. Buchanan was acting as an agent in the context of the negotiations, and it therefore did not interfere with a contract involving a third party. Plaintiff's tortious interference with contractual relations claim will be dismissed.

---

[72] *See Advance Capital Parnters, LLC v. Rossman*, 495 F. App'x 235, 238 n.1 (3d Cir. 2012); *Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Inv., Inc.*, No. 09-4855, 2013 WL 5635977, at *16 (E.D. Pa. Oct. 15, 2013); Am. Compl. [Doc. No. 5] ¶¶ 91–93. "Non-disclosure of a material fact would give rise to a cause of action for fraudulent non-disclosure, not for negligent misrepresentation." *Lazin v. Pavilion Partners*, No. 95–601, 1995 WL 614018, at *7 (E.D. Pa. Oct. 11, 1995) (citation omitted).

[73] *Maverick Steel Co., L.L.C. v. Dick Corporation/Barton Malow*, 54 A.3d 352, 355 (Pa. Super. Ct. 2012).

[74] *Reis v. Barley, Snyder, Senft & Cohen*, 667 F.Supp.2d 471, 496 (E.D. Pa. 2009) (citing *Hefferman v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)).

**IV.   CONCLUSION**

This litigation underscores the importance of approaching the legal representation of businesses and individuals with care. Plaintiff's Amended Complaint adequately pleads the existence of an implied attorney-client relationship between Plaintiff and Defendants, but it fails to plausibly assert every legal malpractice claim against both law firms. Moreover, Plaintiff has failed to state a claim for negligent misrepresentation and tortious interference with contractual relations against the Buchanan firm. Accordingly, Defendants' motions to dismiss will be denied in part and granted in part. An order will be entered.